# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................1

II.    BACKGROUND FACTS....................................................................2

     A.    First Request – Parking On Site ..............................................3

     B.    Second Request – Extension of Leave .....................................4

     C.    Third Request – Extension of Recall Period ..........................5

III.   STANDARD OF REVIEW ...............................................................8

IV.   ARGUMENT.....................................................................................9

     A.    Makekau's First Request For Reasonable Accommodation Is Time-Barred ...............................................................................9

     B.    Makekau Cannot Establish a Prima Facie Case for Her Second and Third Requests Because She Cannot Demonstrate She is a Qualified Individual Able to Perform the Essential Functions of the Job with Reasonable Accommodation...............................................12

         1.    2018 Request to Extend Leave ................................17

         2.    2019 Request for Extension to Remain on Recall List.............20

V.    CONCLUSION.................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) .........................................12

*Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).......................................................................................................8, 9

*Armstrong v. Hawaiian Airlines, Inc.*, 416 F.Supp.3d 1030, 1037-38 (D. Hawaiʻi 2019) ...............................................................................................................9

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).................................................8, 9

*Beaulieu v. Northrop Grumman Corp.*, 161 F. Supp. 2d 1135, 1141 (D. Haw. 2000), aff'd, 23 F. App'x 811 (9th Cir. 2001).......................................................9

*Booth v. Nissan N. Am., Inc.*, 927 F.3d 387, 392 (6th Cir. 2019)...........................10

*Broussard v. Univ. of Cal.*, 192 F.3d 1252, 1258 (9th Cir. 1999) ...........................8

*Canupp v. Children's Receiving Home of Sacramento*, 181 F. Supp. 3d 767 (E.D. Cal. 2016) ...........................................................................................................16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 9I L.E d.2d 265 (1986)......................................................................................................................8

*Chan v. Wells Fargo Advisors, LLC,* 124 F. Supp. 3d 1045, 1062 (D. Haw. 2015) ............................................................................................................................13

*Cherosky v. Henderson*, 330 F.3d 1243, 1246–47 (9th Cir. 2003 ...........................10

*Dark v. Curry Cnty.*, 451 F.3d 1078, 1086 (9th Cir. 2006), *cert. denied,* 549 U.S. 1205, 127 S. Ct. 1252, 167 L.Ed.2d 74 (2007) ............................................. 13, 14

*Elzeneiny v. Dist. Of Columbia*, 125 F. Supp. 3d 18, 35 (D.D.C. 2015)................10

*Green v. Brennan*, 578 U.S. 547, 136 S. Ct. 1769, 195 L. Ed. 2d 44 (2016)..........10

*Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167 (10th Cir. 1996) .......................15

i

*Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001) ...............16

*Hutton v. Elf Atochem North America, Inc*., 273 F.3d 884, 892 (9th Cir. 2001) ....13

*Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004) ...........8

*Keen v. Teva Sales & Mktg., Inc.,* 303 F. Supp. 3d 690 (N.D. Ill. 2018) ...............19

*Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481–82 (9th Cir. 1996) ......................23

*Kuehu v. United Airlines, Inc*., No. CV 16-00216 ACK-KJM, 2017 WL 2312475 at
    *10 (D. Haw. May 26, 2017)...............................................................................13

*Larson v. United Natural Foods West Inc*., 518 Fed. App'x. 589, 591 (9th Cir.
    2013) ................................................................................................ 13, 14, 15

*Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013) ....... 23, 24

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348,
    89 L.Ed.2d 538 (1986)......................................................................................8, 9

*Mayers v. Laborers' Health & Safety Fund of North America*, 478 F.3d 364 (D.C.
    Cir. 2007)............................................................................................................10

*Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417-419 (5th Cir.
    2017) ...................................................................................................................19

*Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) ...................................................14

*Nadaf–Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 973 (1st Dist.
    2008)....................................................................................................................16

*National Railroad Passenger Corp. v. Morgan*, 536 U.S 101, 114, 122 S. Ct. 2061,
    153 L.Ed.2d 106 (2002).............................................................................. 10, 11

*Peyton v. Fred's Stores of Ark., Inc*., 561 F.3d 900, 903 (8th Cir. 2009)...............14

*Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008)
    ..............................................................................................................................9

*Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) ..............19

*Samper v. Providence St. Vincent Medical Ctr.*, 675 F.3d 1233 (9th Cir. 2012)....12

*Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000)................................9

*Shea v. City & Cnty. Of San Francisco*, 57 F. App'x 740 (9th Cir. 2003)..............11

*Shim v. United Airlines, Inc.*, No. CIV. 11-00162 JMS, 2012 WL 6742529, at *8-9
    (D. Haw. Dec 13, 2012)........................................................................................13

*Socop–Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194–96 (9th Cir. 2001)........................9

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ...................8

*Tobin v. Liberty Mutual Ins. Co.*, 553 F.3d 121, 130-131 (1st Cir. 2009) ..............10

*Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003), cert. denied, 540 U.S. 982,
    124 S.Ct. 467, 157 L.Ed.2d 373 (2003) ...............................................................14

*Yonemoto v. Shinseki*, 3 F.Supp.3d 827, 845 (D. Haw. 2014)................................11

**STATUTES**

42 U.S.C. § 2000e–5 ...............................................................................................10

42 U.S.C. § 12111(8) ...................................................................................12, 16, 17

42 U.S.C. § 12111(9) ...............................................................................................16

42 U.S.C. § 12117(a) .................................................................................................9

**OTHER AUTHORITIES**

Cal. Gov't Code § 12926(p) (West) .........................................................................16

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KRISTILYN MAKEKAU,<br><br>             Plaintiff,<br><br>       vs.<br><br>CHARTER COMMUNICATIONS, LLC dba SPECTRUM, a foreign profit corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-20; DOE PARTNERSHIPS 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10; and DOE GOVERNMENTAL AGENCIES 1-10,<br><br>             Defendants. | CIVIL NO. 21-00267 JMS-RT<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

## <u>MEMORANDUM IN SUPPORT OF MOTION</u>

## I.    INTRODUCTION

This action arises out of the employment of Plaintiff Kristilyn Makekau ("**Makekau**") with Charter Communications, LLC ("**Charter**"). Makekau's sole claim against Charter is that Charter discriminated against her on the basis of disability in violation of the Americans With Disabilities Act ("**ADA**") when Charter denied her requests for reasonable accommodation on three separate occasions. For the limited purposes of this Motion, it is assumed arguendo that Makekau is an individual with a disability within the meaning of the ADA.

Charter's alleged denial of Makekau's first request for accommodation – to park on site – is not actionable because Makekau untimely filed her charge with the Equal Employment Opportunity Commission ("**EEOC**") outside of the prescribed 300 days limitations period.

The denial of Makekau's second and third requests for accommodation – to extend her leave in 2018 and to extend her time on the recall list in 2019 – are also not actionable because Makekau cannot establish a prima facie case for failure to accommodate. Specifically, Makekau cannot demonstrate that she is a qualified individual who can perform the essential functions of the job with such accommodations. As discussed *infra,* the anticipated duration of Makekau's impairment, approval for her to proceed with surgery, date of her surgery, and ability to return to work after surgery and perform the essential functions of her position was and remains uncertain, as Makekau admits that she continues to be unable to work, with no date scheduled for surgery, and no approval yet to even proceed with surgery.

## II.    BACKGROUND FACTS

Makekau was hired by Charter on or about January 3, 2011 as a customer service representative. SOF 1.

## A.      First Request – Parking On Site

On or before January 30, 2018, after being notified by Charter that all employees in her group would be required to park offsite and catch a shuttle from the offsite parking lot to the office, Makekau spoke with Supervisor Robin Tokunaga ("**Tokunaga**") about getting an exception to park in the regular parking lot rather than the offsite parking lot.  SOF 2.  According to Makekau, she informed Tokunaga that her request to park on site was due to her feet, diabetic neuropathy, and physicality (SOF 2), and Tokunaga informed her that Charter would not be able to make an exception for her, because making an exception for her would mean making an exception for everyone else.  SOF 3.

As a result, Makekau parked in the offsite parking lot and got rides from the parking lot to the office on February 1 and 2, 2018.  SOF 4.  On the morning of February 5, 2018, Makekau parked in the offsite parking lot and in her rush to be on time, injured her right arm, right shoulder, and back as she allegedly used the grab bar on the shuttle to pull herself into the shuttle.  SOF 5.  Upon learning of this injury, Charter promptly sent Makekau to the WorkStar Injury Recovery Center ("**WorkStar**") where Makekau was examined and placed off duty effective immediately that same day.  SOF 6.

**B.     Second Request – Extension of Leave**

Makekau continued to remain on off duty status from February 5, 2018

through August 6, 2018, with no specified end date to return to work.  SOF 7.

In early July, Makekau was notified that her leave of absence, calculated in

accordance with the collective bargaining agreement ("**CBA**"), would end on

August 5, 2018 and she would be terminated.  In accordance with the CBA,

Makekau would then be placed on a recall list on August 5, 2018, pending a full

medical release to return to work.  SOF 8.

On July 28, 2018, Makekau had an orthopedic surgery consultation with

Darryl Kan, MD about her right shoulder.  SOF 9.  Dr. Kan noted Makekau's

health at this time, and requested Makekau obtain medical clearance from her

primary care physician ("**PCP**") before proceeding with shoulder surgery.  SOF 9.

However, Makekau was unable to obtain clearance from her PCP due to her

diabetes and elevated A1C levels.  SOF 10.

Shortly thereafter, Prudence Quebatay ("**Quebatay**"), International

Brotherhood of Electrical Workers ("**Union**") Business Representative, and the

"go-between" for Makekau and Charter, contacted Charter to request an extension

of benefits and leave beyond the six months that Makekau was entitled to under the

CBA.  SOF 11.  In her email request sent to Charter on August 3, 2018, Quebatay

stated that Makekau was currently in physical therapy.  SOF 11.  However, she

4

also made clear that Makekau needed surgery per consultation with Dr. Kan, but that no date for the surgery had been determined as Makekau was waiting for clearance from her PCP to go forward with the surgery.  SOF 11.  Quebatay provided no other information, including about the anticipated duration of Makekau's impairment and recovery time from surgery, return to work date, or ability to work upon return.  *Id.*  Although Quebatay knew, she also did not disclose that Makekau's clearance for the surgery was contingent on Makekau reducing her A1C levels.  SOF 12.

On August 3, 2018 Quebatay was informed that Makekau's employment would be terminated and placed on a recall list pursuant to the CBA if Makekau did not receive a full medical release to return to work by August 5, 2018. SOF 13.  Makekau failed to submit a full medical release by August 5, 2018 and her employment was terminated effective August 6, 2018.  SOF 14.  She was placed on the recall list at that time.  SOF 14.  That same day, August 6, 2018, Makekau visited WorkStar and received another Work Restriction Profile that continued to place her "Off Duty Effective Immediately."  Makekau's WorkStar physicians had no "End Date" in sight for her recovery.  SOF 15.

## C.    Third Request – Extension of Recall Period

WorkStar Work Restriction Profile notes reflect that following her termination on August 6, 2018, Makekau continued to attend monthly physical

5

therapy sessions and visits with WorkStar physicians with no change in her return to work status.  SOF 16.

On January 24, 2019, as her time on the recall list neared its end, Makekau pleaded with her WorkStar physician to obtain a limited release to return to work and obtained a Work Restriction Profile reflecting a change in her status from "Off Duty" to "Modified Duty" with numerous limitations on lifting, carrying, pushing/pulling, bending, and reaching overhead.  SOF 17.  The Modified Duty release also limited Makekau's ability to work to 4-6 hours and specifically cautioned Makekau to avoid repetitive motions, and alternate between sitting 30 minutes and standing for 10-15 minutes at a time, with rest where needed. SOF 17.

On or about January 31, 2019, Quebatay submitted a request to Charter asking for a 6–12 month extension for Makekau to remain on the recall list. SOF 18.  Quebatay stated that Makekau's shoulder still required therapy and future surgery, but she provided no indication as to the expected duration of Makekau's impairment, anticipated date of surgery, estimated recovery time, return to work date or ability to work upon return.  SOF 18.

A few days later, on February 5, 2019, Quebatay sent a follow up email to Charter and again asked for an extension for Makekau to remain on the recall list. SOF 19.  In this request, Quebatay now stated that Makekau is still awaiting

approval for surgery to fix her injury but is able to return to work.  SOF 19.

Quebatay further represented that once Makekau had the surgery and began

therapy, Makekau would be able to return to work with little to no limitations.

SOF 19.  However, Makekau denies telling Quebatay that after surgery she would

be able to return to work with little to no limitations and has no idea where

Quebatay got this information from.  SOF 20.

 Makekau's last day on the recall list was February 6, 2019.  On that day,

Charter informed Quebatay that Makekau's time on the recall list would not be

extended.  SOF 21.

 On or about February 21, 2019, Makekau's WorkStar physician removed the

limited work release he had provided the month before at Makekau's insistence

and placed Makekau back "Off Duty."  SOF 22.

 Thereafter, Makekau's WorkStar doctors have continued to place Makekau

off duty with no anticipated date of her ability to return to work.  SOF 23.

 To date, Makekau has never received a full medical release to return to work

from any of her doctors.  SOF 24.  She has not worked in any capacity since

injuring herself on February 5, 2018 (*id.)* and maintains that she is disabled and

unable to work.  SOF 24, 27.  She has not tried to apply for any positions with

Charter since termination of her employment on August 6, 2018.  SOF 24.  And

her shoulder surgery remains unscheduled to this day.  SOF 25.

Makekau filed a charge with the EEOC alleging disability discrimination on

or about April 25, 2019.  SOF 28.

## III.   STANDARD OF REVIEW

"Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 9I L.E d.2d 265 (1986); *see also Broussard v. Univ. of Cal.*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 3323, 106 S.Ct. 2548); see also *Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 "When the moving party has carried its burden under Rule 56[ (a) ] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation and internal quotation marks omitted); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).  When

> considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsuhita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to drawn in his favor." The court may not, however, weigh conflicting evidence of assess credibility. *In re Barboza*, 545 F.3d at 707. Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Anderson*, 477 U.S. at 250-51, 106 S.Ct. 2505."

*Armstrong v. Hawaiian Airlines, Inc.*, 416 F.Supp.3d 1030, 1037-38 (D. Hawaiʻi 2019) (brackets, quotations, and citations in original).

## IV.   ARGUMENT

### A.   Makekau's First Request For Reasonable Accommodation Is Time-Barred

It is well established that a plaintiff must file a timely charge of discrimination with the EEOC as a prerequisite to maintaining an ADA action. *See* 42 U.S.C. § 12117(a) (ADA incorporating the enforcement procedures set forth in Title VII, 42 U.S.C. § 2000e–5); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000) (under Title VII and the ADA, "failure to file an EEOC charge within the prescribed 300–day period ... is treated as a violation of a statute of limitations"), overruled on other grounds by *Socop–Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194–96 (9th Cir. 2001) (en banc); *Beaulieu v. Northrop Grumman Corp.*, 161 F. Supp. 2d 1135, 1141 (D. Haw. 2000), aff'd, 23 F. App'x 811 (9th Cir. 2001) (plaintiff's complaint under the ADA not time-barred where he filed with the

EEOC within 300 days of the alleged discrimination); *Booth v. Nissan N. Am., Inc.*, 927 F.3d 387, 392 (6th Cir. 2019).

Each denial of a request for an ADA accommodation constitutes a separate and discrete alleged discriminatory act. *Mayers v. Laborers' Health & Safety Fund of North America*, 478 F.3d 364 (D.C. Cir. 2007) (finding that an employer's failure to provide special tools to the plaintiff for her arthritis was "a discrete act of discrimination"), abrogated on other grounds by *Green v. Brennan*, 578 U.S. 547, 136 S. Ct. 1769, 195 L. Ed. 2d 44 (2016); *National Railroad Passenger Corp. v. Morgan*, 536 U.S 101, 114, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002) (identifying "termination, failure to promote, denial of transfer, [and] refusal to hire" as examples of "[d]iscrete acts" because these acts can be said to "occur[ ] on the day that [they] happen[ ]"); *see also Elzeneiny v. Dist. Of Columbia*, 125 F. Supp. 3d 18, 35 (D.D.C. 2015) (applying *Mayers* and *Morgan* to hold that failures to accommodate are properly categorized as discrete discriminatory acts). *See also Cherosky v. Henderson*, 330 F.3d 1243, 1246–47 (9th Cir. 2003) (holding that denial of employees' request for respirators under the Rehabilitation Act was a discrete act of discrimination under *Morgan*).

Requests for ADA accommodation that are not filed with the EEOC within 300 days of denial are time-barred. *Tobin v. Liberty Mutual Ins. Co.*, 553 F.3d 121, 130-131 (1st Cir. 2009) (stating that "if the request is refused, the refusal is a

discrete discriminatory act triggering the statutory limitations period," and holding that the timeliness of a plaintiff's claim "turns solely on whether an actionable denial of his request for accommodations occurred during the limitations period."); *Shea v. City & Cnty. Of San Francisco*, 57 F. App'x 740 (9th Cir. 2003) (finding that a plaintiff's charges that he was discriminated against due to his disability when the employer denied him seniority rights, vacation pay, transfer, and accommodation, were discrete acts that were not similar in kind and fell outside the relevant statutory period); *Yonemoto v. Shinseki*, 3 F.Supp.3d 827, 845 (D. Haw. 2014) (finding that any claims of disability discrimination were wholly separate from plaintiff's retaliation and hostile work environment claims and were not like or reasonably related to such claims); *Morgan*, 536 U.S at 113 ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

In this case, Makekau's EEOC charge was filed on **April 25, 2019**.  SOF 28. 300 days prior to April 25, 2019 is **June 29, 2018**.  Therefore, any alleged acts of discrimination which occurred prior to June 29, 2018 are untimely.

Makekau alleges that her first request for accommodation to park on-site was made to Charter, and denied by Charter, on **January 30, 2018** (SOF 2, 3), six months beyond the expiration of the prescribed 300-day filing period.

11

Accordingly, Makekau's claim of discrimination based on Charter's alleged denial of her request to park on-site is time-barred and summary judgment should be granted.[1]

### B. Makekau Cannot Establish a Prima Facie Case for Her Second and Third Requests Because She Cannot Demonstrate She is a Qualified Individual Able to Perform the Essential Functions of the Job with Reasonable Accommodation.

To establish a prima facie case for failure to accommodate, Makekau must demonstrate that (1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she suffered an adverse employment action because of her disability.  *Samper v. Providence St. Vincent Medical Ctr.*, 675 F.3d 1233 (9th Cir. 2012), citing *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).

Under the ADA, a "qualified individual" is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff bears the burden of proving that she is a "qualified individual." *Dark v.*

---

[1] Charter acknowledges that the denial of Makekau's other alleged requests for accommodation (i.e. the 2018 request for extended leave and the 2019 requests for extension to remain on the recall list) are separate and distinct acts of alleged discrimination and are not time-barred based on the filing of the EEOC charge in April 2019.

*Curry Cnty.*, 451 F.3d 1078, 1086 (9th Cir. 2006), *cert. denied,* 549 U.S. 1205, 127 S. Ct. 1252, 167 L.Ed.2d 74 (2007), citing *Hutton v. Elf Atochem North America, Inc.*, 273 F.3d 884, 892 (9th Cir. 2001). Plaintiff also bears the burden of showing that the accommodation is reasonable and would have enabled her to perform the essential functions of the position.  *Dark*, 451 F.3d at 1088.

In considering whether a leave of absence is a reasonable accommodation, "the question is whether the leave of absence is likely to enable the employee, upon his return from leave, to resume performing the essential functions of the job." *Shim v. United Airlines, Inc*., No. CIV. 11-00162 JMS, 2012 WL 6742529, at *8-9 (D. Haw. Dec 13, 2012) (internal citation and quotation omitted).  *See also Chan v. Wells Fargo Advisors, LLC,* 124 F. Supp. 3d 1045, 1062 (D. Haw. 2015) (noting that "the Ninth Circuit cited with approval a California case holding that a finite leave of absence is a reasonable accommodation under the ADA, provided it is likely that, following the leave, the employee will be able to perform his or her duties"); *Kuehu v. United Airlines, Inc*., No. CV 16-00216 ACK-KJM, 2017 WL 2312475 at *10 (D. Haw. May 26, 2017).

However, "Defendant is not required to extend an indefinite leave to Plaintiff." *Kuehu v. United Airlines, Inc*., No. CV 16-00216 ACK-KJM, 2017 WL 2312475 at *10 (D. Haw. May 26, 2017), citing *Larson v. United Natural Foods West Inc*., 518 Fed. App'x. 589, 591 (9th Cir. 2013).  *See also Peyton v. Fred's*

13

*Stores of Ark., Inc*., 561 F.3d 900, 903 (8th Cir. 2009) (affirming summary judgment for employer where plaintiff admitted that at the time of termination, she had no idea when, if ever, she would be able to return"); *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003), cert. denied, 540 U.S. 982, 124 S.Ct. 467, 157 L.Ed.2d 373 (2003) (reversing judgment as a matter of law for plaintiff and rendering judgment for defendant where plaintiff "was requesting an accommodation of indefinite leaves of absence so that he could work at some uncertain point in the future"); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) (affirming summary judgment stating "**nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect**") (emphasis added).

Therefore, where leave is sought and recovery time is unspecified, leave under such circumstances may not be a reasonable accommodation.  *See e.g. Dark v. Curry Cnty*., 451 F.3d 1078 at 1090 (noting that "**recovery time of unspecified duration may not be a reasonable accommodation** (primarily where the employee will not be able to return to their former position and cannot state when and under what conditions he could return to work at all)") (emphasis added).

For example, in *Larson v. United Natural Foods West Inc*., 518 Fed. App'x. 589 (9th Cir. 2013), the plaintiff, a commercial truck driver, was diagnosed with alcoholic dependence and sought a leave of absence to allow him to complete

treatment recommendations by a substance abuse professional.  In affirming the

district court's grant of summary judgment for the employer and holding that

Mr. Larson was not a qualified individual under the ADA, the court stated that "an

indefinite, but at least six-month long, leave of absence … **so that he might**

**eventually be physically qualified** under DOT regulations is not a reasonable

accommodation."  518 Fed. App'x. at 591 (emphasis added).

In *Larson,* the Ninth Circuit cited with approval *Hudson v. MCI Telecomms.*

*Corp*., 87 F.3d 1167 (10th Cir. 1996) for the proposition that "for a requested

accommodation to be reasonable, **the plaintiff must present evidence of the**

**impairment's expected duration**, and not the duration of the leave request." *Id.*

at 1169 (emphasis added).  In *Hudson,* the plaintiff argued that the district court

erred by granting summary judgment to the employer on the grounds that plaintiff

failed to create a genuine issue of material fact concerning her status as a qualified

individual under the ADA.  In affirming summary judgment for the employer, the

court stated "plaintiff failed to present any evidence of the expected duration of her

impairment as of the date of her termination."  87 F.3d at 1169.  In addition, the

court stated "[t]he physicians' reports upon which plaintiff relies indicate only that

permanent impairment was not anticipated at the time the reports were prepared.

The forms provide no indication, however, of when plaintiff could expect to

resume her regular duties at MCI." *Id.* "Moreover, Dr. Conyers's notes through the date of her termination underscore the uncertainty of her prognosis." *Id.*

Similarly, in *Canupp v. Children's Receiving Home of Sacramento*, 181 F. Supp. 3d 767 (E.D. Cal. 2016), the United States District Court for the Eastern District of California granted summary judgment to the employer after finding that additional leave would not have been a reasonable accommodation under California's Fair Employment and Housing Act ("FEHA")[2] where at the time that plaintiff's employment was terminated, plaintiff did not know when any of her surgeries would be performed or when she might be able to return to work. 181 F. Supp. at 777-778.

Accordingly, as discussed *infra,* assuming arguendo for purposes of this Motion that Makekau is disabled within the meaning of the ADA, Makekau's claim fails because she cannot establish that she is a "qualified individual". A "qualified individual" is an individual "who, with or without reasonable accommodation, **can perform** the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added).

---

[2] The definition of "reasonable accommodation" under FEHA is virtually identical to the definition under the ADA. *Nadaf–Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 973 (1st Dist. 2008); *see* Cal. Gov't Code § 12926(p) (West); 42 U.S.C. § 12111(9); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001) (applying "reasonable accommodation" analysis under ADA to same inquiry under FEHA).

Makekau is not a "qualified individual" because she cannot prove that she can perform the essential functions of her position with the accommodations requested – extended leave and extended time on the recall list.  42 U.S.C. § 12111(8).

### 1.    2018 Request to Extend Leave

Makekau injured herself on February 5, 2018.  SOF 5.  Six months later, Makekau remained injured and off work and unable to return to work.  SOF 7. When the Union requested an extension of leave for her on August 3, 2018, the expected duration and recovery time of her impairment remained unspecified and uncertain.  SOF 11, 12.

The Union's August 3, 2018 request clearly reflects the unspecified duration of Makekau's impairment and leave request, and the uncertainty surrounding Makekau's ability to return to work to perform her job.  For example, in its August 3, 2018 email to Charter, the Union did not set forth any length of extension being requested.  It also did not include in its request any indication of the expected duration or recovery time for Makekau.  Although the Union's request for extended leave did mention that "Kristi needs to have surgery and she is awaiting the approval before she can schedule the procedure" (SOF 11), the Union did not provide Charter with any date when Makekau would be or was expected to be cleared by her doctor for the surgery.  *Id.*  The Union also did not inform Charter of when the surgery was expected to take place.  *Id.*

In its email to Charter, the Union "included the request form [sic] her [Makekau]."  SOF 11.  However, Makekau's request only further demonstrates that the accommodation being sought is indefinite and fraught with uncertainty; i.e. as Makekau states:

> I am currently on WC from an injury I sustained while at work and am under doctors care. … I **am currently in PT and finally had a consultation with the orthopedic surgeon this past Saturday July 28, 2018 to discuss an action plan.  I am waiting for my PCP to give me clearance to go forth with surgery.  The date has not yet been determined.**  I have been doing my due diligence to follow the procedures required to return to work, but really am at the will of WC and the insurance company's approvals to get things done. (emphasis added)

Additionally, Makekau's doctor notes that she submitted to Charter after her injury on February 5, 2018, and up through the Union's request for extension on August 3, 2018, further "underscore[d] the uncertainty of her prognosis."  SOF 7.  From the date of injury, on February 5, 2018, up through the date of the Union's request on August 3, 2018, all of the doctor's notes submitted consistently reflect that Makekau is "OFF DUTY" "effective immediately" with no "End date" in sight and that Makekau instead will continue to be off duty "until next visit" with her doctor.  SOF 7.  In fact, on August 6, 2018, the same date that Charter sent Makekau a letter of termination and placement on the recall list, Makekau obtained another doctor note from WorkStar, which again kept her "OFF DUTY" until next visit.  SOF 15.

18

Makekau admits that she still has not had the surgery and still has not been approved to have surgery. SOF 25. She maintains that she cannot work due to her disability. SOF 27. She also admits that Dr. Kan did not and could not tell her whether or not, even with surgery, she would be able to return to a functional capacity that would enable her to perform the essential functions of her job. SOF 26. What she does know for certain is that Dr. Kan did tell her that even with surgery, she will not be 100% of what she was before her injury. SOF 26.

Accordingly, the evidence is abundantly clear that as of August 3, 2018, and continuing up through today, the duration of Makekau's impairment, and whether she could get the clearance to schedule the surgery, is uncertain. As Makekau concedes, it also is uncertain whether the surgery would enable her to return to work, and, if so, when she would be able to resume her regular duties.[3]

---

[3] Notably, assuming arguendo Makekau had been approved for and had the surgery, courts also have found that an indefinite leave of absence pending recovery from surgery is not a reasonable accommodation. *See, e.g., Keen v. Teva Sales & Mktg., Inc.,* 303 F. Supp. 3d 690 (N.D. Ill. 2018) (granting summary judgment where plaintiff did not provide defendants with any definite return date following her surgery and could produce no evidence that she was able to perform the essential functions at the time of her termination); *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417-419 (5th Cir. 2017) (affirming summary judgment on plaintiff's failure-to-accommodate claims where plaintiff was medically incapable of performing his duties at the time of his termination due to recovery from back surgery); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (affirming district court's grant of summary judgment and holding that the plaintiff was "not a 'qualified individual with a disability' under the ADA" because he could not attend work while recuperating from an ankle surgery).

The law is clear that Charter is not required to wait indefinitely for Makekau to have surgery and recover so that she "might eventually be" qualified to perform her job.  Charter is not obligated to provide a leave of absence premised on an uncertain and tenuous prospect of recovery.  Makekau is therefore not a qualified individual and the 2018 Request to extend her leave of absence was not a reasonable accommodation.

### 2.    2019 Request for Extension to Remain on Recall List

Makekau's claim that she was discriminated against in violation of the ADA when Charter denied the Union's request for an extension for her to remain on the recall list likewise fails because Makekau cannot establish that she is a "qualified individual."

As the end of Makekau's six months on the recall list approached, the Union requested an extension for Makekau to remain on the recall list for another 6–12 months.  SOF 18, 19.   However, the Union's requests provided Charter with no more information about the anticipated duration of Makekau's impairment and ability to return to work than six months prior when the Union had requested an extension of leave for Makekau.

In its email sent January 31, 2019, the Union told Charter:

Asking if we can maybe look at extending another 6-12 mos and hoping there will be an opening then. Kristi was compliant with the company requirements of parking in a different location and riding a company provided shuttle to the call center.  As a result she injured her shoulder

therefore, requiring therapy and future surgery.  I want to remind everyone that Kristi has been keeping up with her appointments and therapy diligently.  We are asking for non-precedent setting extension to remain on the recall list and advise us when there will be an open position for her.

SOF 18.

Accordingly, although the Union did request a specific extension of 6-12 months for this request, it still failed to provide Charter with any anticipated duration of Makekau's impairment, anticipated date for Makekau's future surgery (even after six months had passed), and/or indication of her recovery time and return to work.

In its follow up request, sent by email February 5, 2019, the Union reiterated its request for an extension for Makekau to remain on the recall list.  SOF 19.  However, its request again reflected the uncertainty of the duration of Makekau's impairment and her ability to return to work.  *Id.*  Although in this request the Union now claimed that "Kristi is able to return" to work, the Union also stated in the same breath "but [she] is still awaiting approval for surgery to fix the injury" and "[o]nce Kristi has her surgery and begins therapy she should be able to return to work with little to no limitations."  SOF 19.   Bottom line, the Union again did not mention any date for Makekau's surgery or expected duration of therapy and recovery time.  Further, to the extent that the Union claimed Makekau should be able to return to work after the surgery and therapy "with little to no limitations," the evidence belies the Union's representations.  Makekau testified that she did not

21

tell the Union that and does not know where the Union got that from.  SOF 20.

Further, Dr. Kan told her that she will not be 100% after surgery, and he did **not**

tell her that after surgery, she should be able to return to work with little to no

limitations.  SOF 26.

The uncertainty of the duration of Makekau's impairment, and the

uncertainty of her ability to resume her essential job functions at the time of the

Union's requests, as well as after surgery and therapy, is further evidenced by

Makekau's testimony about her ability to return to work, as mentioned by the

Union in its February 5, 2019 email.  Makekau testified that she asked one of the

doctors at WorkStar for a release and was told by the doctor that she cannot fully

release her but could on a limited basis to do "something small or light."  SOF 17.

The WorkStar Work Restriction Profile dated January 24, 2019 releasing Makekau

to return to work to "MODIFIED DUTY" has numerous restrictions, including

what appears to be a 4–6 hours work restriction, along with restrictions on lifting,

carrying, pushing/pulling, reaching overhead and climbing stairs.  Additional

restrictions include avoiding repetitive motions, and alternate between sitting

30 minutes and standing for 10-15 minutes at a time, with rest as needed.  SOF 17.

However, as Makekau further testified, the following month, her doctor removed

her from Modified Duty and placed her back off duty because her doctor "really

didn't advise me to do it in the first place" and the release to return to restricted

duty was "just because I was trying to go back to work for this [recall period]" SOF 22.

Courts have granted summary judgment where the plaintiff was not qualified to work based on plaintiff's own assertions of disability and opinions from the plaintiff's medical providers. *See e.g. Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481–82 (9th Cir. 1996); *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013). In *Kennedy*, the Ninth Circuit affirmed summary judgment for the employer due to plaintiff's physician's testimony that the plaintiff was totally disabled as of the date of the request, and plaintiff's own statements on state disability benefit and social security administration forms. 90 F.3d at 1481-1482. These forms directly contradicted plaintiff's deposition testimony that she was not totally disabled, which deposition testimony in support of her ADA claim the court found "uncorroborated and self-serving". *Id.* at 1481.

Similarly in this case, Makekau admits that when her doctor issued the Modified Duty return to work release in January 2019, it was at her urging in an attempt to qualify herself for a possible recall and the doctor "really didn't advise [her] to do it in the first place." SOF 22. In fact, she was released to return to work on Modified Duty after months of notes from her doctor placing her "OFF DUTY", and just a week prior to the Union's request to extend her on the recall list. Then, immediately thereafter, her doctor retracted the release to return to

23

work on Modified Duty and returned her to Off Duty status on February 21, 2019.

SOF 22.  This designation remains unchanged to the present.  SOF 23.  Makekau's

most recent work restriction profile on July 19, 2022 continues to state "Off-Duty

Effective Immediately."  SOF 23.

Accordingly, over four years since the Union requested an extension of

leave, and over three years since the Union requested an extension to remain on the

recall list, Makekau still has not had surgery (SOF 25), still does not know when

she will be cleared to have surgery (*id.*), has never contacted Charter to inquire

about open positions to return to work (SOF 24), has not worked in any capacity

anywhere (SOF 24), and maintains that she is disabled and still unable to work.

SOF 24, 27.

Therefore, Makekau was not a qualified individual at the time of the Union's

2018 extension request and 2019 extension requests.  She was unable to perform

with or without accommodation and she is unable to do so now.  No length of

leave would have enabled her to return to work and she cannot meet her burden to

prove a prima facie case for failure to accommodate.  *See Lawler v. Montblanc N.*

*Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013) (affirming summary judgment for a

prima facie FEHA disability claim where the plaintiff admitted that her disability

made it impossible for her to fulfill the duties of her position, she had been

unemployed since October 2009, had not applied for any positions, and made no efforts to secure employment).

## V.    CONCLUSION

For the foregoing reasons, Charter respectfully requests that this Court grant summary judgment in its favor and against Makekau as to her First Amended Complaint.

DATED:  Honolulu, Hawaii, October 12, 2202.

/s/ Ross T. Shinyama
RONALD Y.K. LEONG
LANI NARIKIYO
ROSS T. SHINYAMA
Attorneys for Defendant
**CHARTER COMMUNICATIONS LLC**