IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KRISTILYN MAKEKAU,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CHARTER COMMUNICATIONS, LLC<br>dba SPECTRUM, a foreign profit<br>corporation; JOHN DOES 1-10; JANE<br>DOES 1-10; DOE CORPORATIONS 1-<br>20; DOE PARTNERSHIPS 1-10; DOE<br>UNINCORPORATED<br>ORGANIZATIONS 1-10; and DOE<br>GOVERNMENTAL AGENCIES 1-10,<br><br>                    Defendants. | CIV. NO. 21-00267 JMS-RT<br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT, ECF<br>NO. 35 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 35

## I. INTRODUCTION

Before the court is a motion by Defendant Charter Communications, LLC ("Defendant") seeking summary judgment as to all incidents asserted by Plaintiff Kristilyn Makekau ("Plaintiff") in her First Amended Complaint. ECF No. 35. The court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's first incident of discrimination under the Americans with Disabilities

Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., but DENIES the Motion as to the second and third incidents.

## II. <u>BACKGROUND</u>

### A.   **Factual Background**

Plaintiff worked as a customer service representative for Defendant Charter Communications for approximately seven years, from January 3, 2011, to February 5, 2018, when she was placed on leave for a worker's compensation injury.  ECF No. 36 at PageID.160 ¶ 1 and PageID.1627 ¶ 6.[1]  Plaintiff's "essential job duties were to sit at [her] desk, take calls and answer emails to try to sell Charter's services to current and potential customers."  ECF No. 42-1 at PageID.348 ¶ 6.  Plaintiff's "job did not require any heavy lifting or other physically taxing manual labor."  *Id*. at ¶ 7.  During her seven years of service to Charter, Plaintiff performed her job duties without any substantial issues.  *Id.*

Plaintiff is a clinically obese woman with a long history of diabetes and hypertension, which resulted in physical limitations related to neuropathy in her hands and feet.  *Id*. at ¶ 8.  Plaintiff's conditions may impair her ability to walk, talk, see, work, and perform day-to-day activities.  *Id*. at ¶ 9.  Plaintiff's

---

[1]  The court cites to the Defendant's Concise Statement of Facts, ECF No. 36, for facts that are not disputed by Plaintiff in her Concise Statement of Facts, ECF No. 42.  *See* Local Rule 56.1(g).

supervisors were aware of her symptoms, and her managers assisted her when she had diabetic episodes at work.  *Id.* at ¶ 10–11.

### 1.   *Incident 1 – Parking Request*

Plaintiff requested a parking accommodation ("Incident 1") around January 30, 2018.  ECF No. 36 at PageID.160 ¶ 2.  Earlier that month, Defendant informed Plaintiff she would be required to park at an offsite lot and catch a shuttle to the office.  ECF No. 42-1 at PageID.349 ¶ 13.  This required Plaintiff to walk approximately 50-feet from her parking spot to the shuttle bus and then another 180-feet from the shuttle drop-off location to her office building.  *Id.* at ¶ 15.  Due to her obesity, diabetes, and "severe pins and needles" pain stemming from the neuropathy in her feet, Plaintiff requested from her supervisor, Robin Tokunaga ("Supervisor"), an accommodation to park on-site at the office building.  *Id.* at PageID.350 ¶ 16.

Plaintiff's Supervisor denied her request for this accommodation and did not offer any alternatives.  Her Supervisor said that if she allowed Plaintiff to park on-site, the company would have "to do it for everyone else."  ECF No. 36 at PageID.160 ¶ 3.  Plaintiff asked if she could get a doctor's note to help buttress her request, but her Supervisor "said no."  *Id*.

On February 5, 2018, shortly after her Supervisor denied her accommodation request, Plaintiff was injured while taking the shuttle to work.  *Id.*

at ¶ 5.  While pulling herself into the shuttle, Plaintiff injured her arm, shoulder, and back.  *Id*.  A worker's compensation doctor examined her injuries and determined that she needed to be "off duty."  *Id*. at PageID.161 ¶ 6.  She was placed on leave with worker's compensation until August 6, 2018.  *Id*. at ¶ 7.

### 2.      *Incident 2 – Leave Extension*

While on leave with worker's compensation, Plaintiff received a notice of pending termination ("pending termination notice").  On July 5, 2018, Defendant's Human Resources Director, Adris Murayama ("HR Director") sent Plaintiff a notice stating that she would be terminated if she did not return to work within a month, on August 5, 2018.  *Id*. at ¶ 8.  The collective bargaining agreement[2] had a policy requiring employees to return to work within six-months of the time that their leave of absence started.  *Id*.  Plaintiff was unaware of this leave return policy prior to receiving the notice.  ECF No. 42-1 at PageID.352 at ¶ 34.

At the time Plaintiff received the pending termination notice, Plaintiff was still navigating her treatment plan for the on-the-job injuries she suffered.  On July 5, 2018—the same day she received the pending termination notice—she was approved for an "MRI related to [her] work-injuries."  *Id*. at PageID.351 at ¶ 29.

---

[2]  Neither party has asked the court to consider the relevance of the collective bargaining agreement to Plaintiff's ADA claim, and thus the court does not consider it in the analysis to follow.

And on July 28, 2018, Orthopedic Surgeon Dr. Darryl Kan ("Surgeon")
determined that Plaintiff required surgery for her job-related injuries.  ECF No. 36
at PageID.161 ¶ 9.  Due to her elevated A1C levels, however, she was unable to
receive medical clearance for the surgery.  *Id.* at ¶ 10.

While injured, on worker's compensation, and awaiting surgery,
Plaintiff requested another disability accommodation, in the form of additional
leave ("Incident 2"), before her predetermined termination date.  On August 3,
2018, Plaintiff requested, through her union representative, Prudence Quebatay
("Union Representative"), a "Leave of Absence due to medical reasons."  ECF No.
42-3 at PageID.359.[3]  Plaintiff sought this request "so that [she] can focus on
getting better so that [she] can return to work and not worry about [her] job
security."  *Id.*

On August 3, 2018, Defendant's HR Director denied this request and
stated in an email to the Union Representative that "[i]f [Plaintiff] is not fully
released to work, she will be terminated and placed on the recall list for 6 months
as per the BUA."  *Id.* at PageID.358; ECF No. 36 at PageID.162 § 13.  Because the

---

[3]  Unpaid medical leave may be a reasonable accommodation under the ADA.  *See* 29
C.F.R. Part 1630, Appendix (discussing § 1630.2(o)).  Even extended medical leave, or an
extension of an existing leave period, may be a reasonable accommodation if it does not pose an
undue hardship on the employer.  *See* 42 U.S.C. § 12111(9), (10); *Norris v. Allied-Sysco Food
Servs., Inc.,* 948 F. Supp. 1418, 1438 (N.D. Cal. 1996).  If Plaintiff's "medical leave was
a reasonable accommodation, then her inability to work during the leave period would not
automatically render her unqualified."  *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243 1247 (9th
Cir. 1999).

Defendant "did not receive any documentation from [Plaintiff] fully releasing [her] to return to work," she was terminated effective August 6, 2018.  ECF No. 42-4 at PageID.360; *see also* ECF No. 36 at PageID.162 ¶ 14.

### 3.    *Incident 3 – Recall Extension*

On August 6, 2018, the HR Director informed Plaintiff that she was terminated and placed on a recall list for six months.  ECF No. 42-4 at PageID.360. While on the "recall list," Plaintiff could "reapply for an open position" for which she qualified, upon recovery.  *Id*.  Plaintiff remained on the recall list for many months, while awaiting a "*full medical release* to return to work," as required by Defendant for re-hire.  *Id.* (emphasis added).

During this six-month period, Plaintiff was unable to receive a full medical release to return to work, because she was still awaiting approval for surgery.  ECF No. 36 at PageID.162 ¶ 19.  Nevertheless, on January 24, 2019, Plaintiff's worker's compensation doctor deemed that she could return to work with "modified duty."  *Id*. at ¶ 17.  The Union Representative informed Defendant that Plaintiff "is able to return [to work] but is still awaiting approval for surgery to fix the injury."  ECF No. 36-2 at PageID.231.  However, around that time, there were "no job postings [-] for Sales, Retention, and Customer Service" for which Plaintiff could apply.  ECF No. 42-6 at PageID.364.

Accordingly, on January 31, 2019, and February 5, 2019, the Union Representative requested that Plaintiff be extended on the recall list ("Incident 3"). ECF No. 36 at PageID.162 ¶ 18–19.  "[W]ell aware of all the changes happening" within Defendant's company, the Union Representative asked if Plaintiff could be extended on the recall list for another six to twelve months, noting that this would be a "non-precedent setting extension" which has been "availa[ble] for others." ECF No. 36-2 at PageID.227.  On February 6, 2019, Defendant denied Plaintiff's recall extension request.  ECF No. 36 at PageID.163 ¶ 21.

## B.     Procedural Background

On or about April 25, 2019, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  ECF No. 5 at PageID.24.  Plaintiff received her "Right to Sue" letter from the EEOC on or about March 12, 2021.  *Id.*

Plaintiff filed her federal Complaint on June 7, 2021, and a First Amended Complaint on June 11, 2021, claiming ADA employment discrimination due to Defendant's failure to engage in the "interactive process" and failure to provide a reasonable accommodation.  ECF No. 5 at PageID.19.  Defendant filed the instant Motion for Summary Judgment on October 12, 2022.  ECF No. 35.  Plaintiff filed an Opposition on January 2, 2023.  ECF No. 41.  Defendant filed a

Reply on January 9, 2023.  ECF No. 47.  A hearing was held on January 25, 2023.

ECF No. 55.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of

material fact, and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary

basis on which a reasonable fact finder could find for the nonmoving party, and a

dispute is 'material' only if it could affect the outcome of the suit under the

governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation

marks omitted)).

"The moving party initially bears the burden of proving the absence of

a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

(9th Cir. 2010).  "When the moving party has carried its burden . . . , its opponent

must do more than simply show that there is some metaphysical doubt as to the

material facts"; instead, the opponent must "come forward with specific facts

showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v.

Zenith Radio*, 475 U.S. 574, 586–87 (1986).

When considering a motion for summary judgment, the court views

the facts and draws reasonable inferences in the light most favorable to the

nonmovant.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "[T]he court does not make credibility determinations or weigh conflicting evidence."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Moreover, it is not the court's duty to dredge through the record to determine whether the evidence unmistakably favors one side or the other—the court must instead ask whether a fair-minded jury could return a verdict for the Plaintiff based on the Plaintiff's presentation of the evidence.  *See Anderson*, 477 U.S. at 252.

## IV.  **ANALYSIS**

A.    **Incident 1 is Time-Barred**[4]

   1.    ***ADA Statutory Framework***

Requests for ADA accommodations that are not filed with the EEOC within 300 days of denial are time-barred.[5]  *See* 42 U.S.C. § 12117(a); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), *overruled on other grounds by Socop–Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194–96 (9th Cir. 2001)

---

[4]  Apparently recognizing that Incident 1 may be time-barred, Plaintiff asks the court to "recognize [Incident 1 as] evidence that may still constitute relevant background information," citing to *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (while a time-barred claim has no "present legal consequence[ ], ... [i]t may still constitute relevant background evidence in a proceeding in which the status of a current practice is at issue.").  ECF No. 41 at PageID.340.  Although the court will not rule on the admissibility of trial evidence at this time, either party may raise this issue with the court pretrial, such as in a Motion in Limine.

[5]  Hawaii is a "workshare" state "such that administrative claims filed with the EEOC are deemed 'dual-filed' with the state's local agency [the Hawaii Civil Rights Commission] and vice versa." *U.S. E.E.O.C. v. Glob. Horizons, Inc.*, 904 F. Supp. 2d 1074, 1090 n.2 (D. Haw. 2012).  In a "worksharing" state the limitations period is extended from 180 to 300 days by statute.  *Id.*

(under the ADA, "failure to file an EEOC charge within the prescribed 300–day period ... is treated as a violation of a statute of limitations") (en banc).  A plaintiff must file a timely charge of discrimination with the EEOC as a prerequisite to maintaining an ADA action.  *See Beaulieu v. Northrop Grumman Corp.*, 161 F. Supp. 2d 1135, 1141 (D. Haw. 2000) (plaintiff's complaint under the ADA was not time-barred when he filed with the EEOC within 300 days of the alleged discrimination).

Each denial of a request for an ADA accommodation constitutes a separate and discrete discriminatory act, subject to its own unique statute of limitations timeline.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S 101, 114 (2002) (identifying "termination, failure to promote, denial of transfer, [and] refusal to hire" as examples of "[d]iscrete acts," because these acts "'occur[ ]' within the appropriate time period").

An exception to the statute of limitations exists within the continuing violations doctrine—"discriminatory conduct contributing to a hostile work environment claim, but falling outside of the statutory period for filing a claim, may be considered by the Court for purposes of determining liability."  *See Morgan*, 536 U.S. at 116–17.  The doctrine distinguishes between discrete acts of discrimination and hostile work environment claims.  A discrete act consists of an unlawful practice that "occurred" on the day it "happened," and includes, for

example, "termination, failure to promote, denial of transfer, or refusal to hire."

*Id.* at 114.  In comparison, hostile work environment claims "are based on the

cumulative effect of individual acts," "occur[ing] over a series of days or perhaps

years and, in direct contrast to discrete acts, a single act of harassment may not be

actionable on its own."  *Id.* at 103 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17,

21 (1993)).  Thus, "provided that an act contributing to the claim occurs within the

filing period, the entire time period of the hostile environment may be considered

by a court for the purposes of determining liability. . .. the employee need only file

a charge within [the relevant time period] of any act that is part of the hostile work

environment."  *Id*. at 117–18.

   However, "discrete discriminatory acts are not actionable if time

barred, even when they are related to acts alleged in timely filed charges."  *Id.* at

113.  In determining whether particular events are part of the same actionable

hostile work environment claim, the court considers "whether they were

sufficiently severe or pervasive, and whether the earlier and later events amounted

to the same type of employment actions, occur[ing] relatively frequently, [or]

perpetrated by the same managers."  *Porter v. California Dep't of Corrections*,

419 F.3d 885, 893 (9th Cir.2004) (internal quotation marks omitted) (quoting

*Morgan*, 536 U.S. at 116).

### 2.   *Application*

Plaintiff's Incident 1 falls outside the statute of limitations.  Incident

1—that Plaintiff was denied a reasonable accommodation as to parking—occurred

around January 30, 2018, ECF No. 36 at PageID.160, but Plaintiff did not file her

EEOC charge until April 25, 2019, well outside the 300-day statute of limitations

window.  *Id.* at PageID.164.  Because Incident 1's reasonable accommodation

request occurred more than 300 days before the EEOC filing, Plaintiff's Incident 1

is untimely.

Plaintiff's reliance on the continuing violations doctrine falls short.

Denials of Plaintiff's requests for accommodations were separate and distinct acts,

unlike acts amounting to a continuing violation as explained in *Porter*, 419 F.3d at

893.  Plaintiff experienced different "employment actions," amounting to denials

of a parking accommodation, a leave extension, and a recall extension.  These

denials were also distinct in time, not occurring "relatively frequently" but

spanning years.  The three accommodation denials were not "sufficiently severe or

pervasive," as is characteristic in a hostile work environment claim.

And as the court has clarified before, related acts do not necessarily

meet the threshold for bypassing the statute of limitations under the continuing

violations doctrine.  Even though Plaintiff's claims are significantly related and

perhaps even causally linked (e.g., but for the accommodation denial in Incident 1,

Case 1:21-cv-00267-JMS-RT   Document 60   Filed 02/13/23   Page 13 of 17   PageID.485

there would be no need for a request in Incidents 2 and 3), Incident 1 is ultimately discrete. *See Yonemoto v. Shinseki*, 3 F. Supp. 3d 827, 845 (D. Haw. 2014) (discussing *Porter*, 419 F. 3d at 894, and stating that "merely asserting otherwise untimely discrete acts as part of a hostile work environment claim does not make them timely"). Because Incident 1 is not part of a continuing violation, it is time-barred and the court GRANTS summary judgment as to this incident.

**B.    Incidents 2 & 3 Survive Defendant's Summary Judgment Challenge[6]**

*1.    ADA Legal Framework*

"The ADA prohibits an employer from discriminating 'against a qualified individual with a disability because of the disability.'" *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)). To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).

The first element in establishing a prima facie claim for ADA discrimination is disability; Plaintiff must show that she had a "physical or mental

---

[6] Defendant agrees Incidents 2 and 3 fall within the statute of limitations. ECF 35-1 at PageID.143.

impairment that substantially limit[ed] one or more major life activities." *See* 42 U.S.C. § 12102(1)(A). For purposes of this Motion, Defendant does not dispute that Plaintiff "is an individual with a disability within the meaning of the ADA." ECF No. 35-1 at PageID.132.

To satisfy the second element of a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that "(2) [s]he is a qualified individual able to perform the essential functions of the job with reasonable accommodation." *Allen*, 348 F.3d at 1114. A "qualified individual," is someone who "with or without reasonable accommodation, [could] perform the essential functions of the employment position." 42 U.S.C. § 12111(8). And to determine whether an employee could have performed her "essential functions of the job with reasonable accommodation," an employer has a "mandatory obligation" to engage in the interactive process. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112–13 (9th Cir. 2000) (en banc), *vacated on other grounds sub nom.*, *US Airways, Inc. v. Barnett*, 535 U.S. 391, 406 (2002).

Under Ninth Circuit law, "notifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp v. United Transp. Union*, 889

14

F.3d 1088, 1095 (9th Cir. 2018). *Barnett* held that if an employer fails to engage in the interactive process in good faith, the employer will be liable under the ADA "*if a reasonable accommodation would have been possible*." 228 F.3d at 116 (emphasis added).

At summary judgment, the burden rests with the Defendant to demonstrate the unavailability of a reasonable accommodation. "Recognizing the importance of the interactive process, the Ninth Circuit also held that if an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation." *Snapp*, 889 F.3d at 1095.[7]

### 2.   *Application*

Defendant has failed to meet its burden to prove that a reasonable accommodation would have been *unavailable* to Plaintiff. Plaintiff's "essential functions" were to "sit at [her] desk, take calls, and answer emails" to sell Defendant's services to potential clients. ECF No. 42-1 at PageID.348 ¶ 6. Defendant had an affirmative duty to engage in the interactive process to find (or attempt to find) a reasonable accommodation for Plaintiff, and there is no evidence

---

[7] In its briefing, Defendant ignores this law. Instead, Defendant states that Plaintiff "[c]annot [d]emonstrate" that she could "[p]erform the [e]ssential [f]unctions of [h]er [j]ob [w]ith [r]easonable [a]ccommodation." ECF 47 at PageID.393. But, as set forth above, the burden is not with Plaintiff to demonstrate her ability to perform with a reasonable accommodation at the summary judgment stage.

in the record that Defendant did so or even attempted to do so.[8]  Furthermore,

Defendant fails to demonstrate at this stage that a reasonable accommodation

would have been unavailable to the Plaintiff, even if it had engaged in the

interactive process.[9]  Because there remains a genuine issue of material fact as to

whether a reasonable accommodation would have allowed Plaintiff to perform

her essential job functions, Defendant's Motion for Summary Judgment fails as

to Incidents 2 and 3.

---

[8]  Defendant argues that Plaintiff was not a qualified individual who would have
benefitted from a reasonable accommodation, because a doctor placed her "off work" after the
onset of her injuries.  ECF No. 47 at PageID.394.  Defendant further argues that Plaintiff's
declaration—stating that certain reasonable accommodations could have enabled her to work—is
a sham and contradicted by her previous deposition assertions: that she was unable to work.  *Id.*
at PageID.394–396 (citing to the "sham affidavit rule" in *Kennedy v. Applause, Inc.*, 90 F.3d
1477, 1481 (9th Cir. 1996)— that "a party cannot create an issue of fact by an affidavit
contradicting prior deposition testimony").

But "[i]n order to trigger the sham affidavit rule, the district court must make a factual
determination that the contradiction is a sham, and the inconsistency between a party's
deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking
the affidavit." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (internal citations
omitted).  The court finds no clear or unambiguous inconsistencies in Plaintiff's deposition and
declaration.  First, Plaintiff's testimony that she has been "disabled and unable to work" could
have meant she was unable to work, as is, without an accommodation.  Second, other evidence in
the record supports Plaintiff's ability to work (e.g., Plaintiff expressing a desire to heal and "to
return to work" prior to submitting her declaration, ECF No. 42-3 at PageID.359, thereby
undercutting Defendant's argument that Plaintiff had an absolute inability to work).  Third,
Plaintiff's inability to work during her leave period did not automatically render her unqualified
to work.  *See Nunes*, 164 F.3d at 1247.  Accordingly, the court does not find Plaintiff's affidavit
to be "sham."

[9]  In contrast, Plaintiff claims that had Defendant engaged in the interactive process to
find a reasonable accommodation, she could have been able to return to work with "breaks to
stand up periodically from [her] desk, return on limited duty or for limited hours, take an
alternative available job placement, work from home, use a wireless head set to talk on the phone
. . ., use a raised desk . . ., use a different chair . . ., sort mail, or do anything else to return to
work."  *Id.* at PageID.353 ¶ 40.

## V.  <u>CONCLUSION</u>

Defendant has failed to meet its burden that a reasonable accommodation was unavailable to Plaintiff as to Incidents 2 and 3.  But Incident 1 is time-barred by the statute of limitations.  For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED as to Incident 1 and DENIED as to Incidents 2 and 3.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February13, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Makekau v. Charter Communications, LLC*, Civ. No. 21-00267 JMS-RT, Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, ECF No. 35